IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE | : CHAPTER 13 |
| | : |
| ANN R. WASHINGTON, | : |
| DEBTOR | : |
| | : CASE NO. 04-30492 |
| ANN R. WASHINGTON, | : |
| PLAINTIFF | : |
| v. | : |
| Mortgage Electronic Registration | : |
| Systems, Inc., Countrywide Home | : |
| Loans, Inc., and Goldbeck McCafferty | : |
| and McKeever, LLC | : |
| Defendants | : Adversary Proceeding No. 05-0021 |

# OPINION

By:  STEPHEN RASLAVICH, UNITED STATES BANKRUPTCY JUDGE.

*Introduction*

The Debtor has filed suit against Mortgage Electronic Registration Systems, Inc. (MERS), Countrywide Home Loans, Inc. (Countrywide) and Goldbeck McCafferty and McKeever, LLC (Goldbeck).  Her Complaint raises claims under federal and state consumer protection law as well as the common law of contracts.  MERS and Countrywide have filed a Motion for Summary Judgment as to all of the claims.[1]  The Debtor has responded to the Motion with a cross motion of her own.  For the reasons set forth below, summary judgment will be granted in favor of the Defendants on all of the counts of the Complaint.[2]

---

[1]Goldbeck has since settled with the debtor.  Plaintiff's Brief, 13; Transcript (T-) 10.

[2]Because the Complaint sought to determine the extent of the secured claim in the Debtor's property, it is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(K).  That subparagraph includes among core proceedings "determinations of the validity, extent, or priority of liens."

*The Causes of Action*

The Complaint pleads five counts: Truth in Lending[3] ("TILA"), the Fair Debt Collection Practices Act[4], Unfair Trade Practices and Consumer Protection Law ("UDAP")[5], common law breach of contract, and Act 6.[6]  The claims involve a mortgage loan which has been assigned four times.  The Plaintiff alleges that Defendants are liable for actions occurring at the inception of the loan, during the term of the loan, and after the loan was in default.  Specifically, it is alleged that the present holder is liable for the original lender's failure to disclose all of the property which secured the loan; that the present holder failed to apply all payments made; and that the present holder charged excessive foreclosure fees.

*Mooted Claims*

Before analyzing each argument, the Court will winnow out those claims no longer extant.  In her Response, the Debtor explains that the count which raises claims under the Fair Debt Collection Practices Act (Count II) was directed solely at Goldbeck. Debtor's Brief, 13; T-10.  Now that the Debtor has settled with Goldbeck, this moots, then, the arguments of MERS and Countrywide that summary judgment should be entered in their favor on those claims.  Count II simply never applied to them.  The Court now turns to the respective motions.

*Standard for Summary Judgment*

---

[3]15 U.S.C. § 1601 et seq.

[4]15 U.S.C. § 1692

[5]73 P.S. § 201-1 et seq.

[6]41 P.S. § 101 et seq.

Motions for summary judgment are governed by Rule 56 of the Federal Rules of

Civil Procedure ("Fed.R.Civ.P.").  Pursuant to Rule 56, summary judgment should be

granted when the "pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law."

Fed.R.Civ.P. 56(c). For purposes of Rule 56, a fact is material if it might affect the

outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct.

2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of demonstrating

that no genuine issue of fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct.

2548, 2552-53, 91 L.Ed.2d 265 (1986).

The court's role in deciding a motion for summary judgment is not to weigh

evidence, but rather to determine whether the evidence presented points to a

disagreement that must be decided at trial, or whether the undisputed facts are so one

sided that one party must prevail as a matter of law. *See Anderson v. Liberty Lobby, Inc.*,

477 U.S. at 249, 252, 106 S.Ct. at 2511.  In making this determination, the court must

consider all of the evidence presented, drawing all reasonable inferences therefrom in the

light most favorable to the nonmoving party, and against the movant. *See United States*

*v. Premises Known as 717 South Woodward Street*, 2 F.3d 529, 533 (3rd Cir.1993); *J.F.*

*Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir.1990), *cert. denied*, 499

U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991); *Gould, Inc. v. A & M Battery and Tire*

*Service*, 950 F.Supp. 653, 656 (M.D.Pa.1997).

To successfully oppose entry of summary judgment, the nonmoving party may not

simply rest on its pleadings, but must designate specific factual averments through the

use of affidavits or other permissible evidentiary material that demonstrate a triable

factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. at 250, 106 S.Ct. at 2511. Such evidence must be sufficient

to support a jury's factual determination in favor of the nonmoving party. *Id.* Evidence that

merely raises some metaphysical doubt regarding the validity of a material fact is

insufficient to satisfy the nonmoving party's burden. *Matsushita Electric Industrial Co., Ltd.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538

(1986). If the nonmoving party fails to adduce sufficient evidence in connection with an

essential element of the case for which it bears the burden of proof at trial, the moving

party is entitled to entry of summary judgment in its favor as a matter of law. *Celotex*

*Corp. v. Catrett*, 477 U.S. at 322-23, 106 S.Ct. at 2552-53.

*The Motion and Cross Motion*

The Defendants make a number of arguments–some general others specific— as

to all of the counts in the complaint.  As a general matter, they begin by arguing that

neither Defendant is a party in interest and so judgment must be entered in their favor.

On a procedural level, they assert that preclusion doctrines such as res judicata, judicial

privilege, *Rooker-Feldman*, and the Statute of Limitations bar all of the counts.[7]  Likewise,

---

[7]The Defendants have also argued that the Plaintiff filed her cross motion out of time.  *See* Response, 1-2.  Indeed, it appears from the docket that all summary judgment motions were due on December 19, 2005.  *See* Stipulation attached to Defendants' Response as Ex. A.  Plaintiff's was filed more than two weeks later, on January 4, 2006.  Plaintiff's counsel puts this down to computer problems (T-17) but that is more in the nature of an explanation than an excuse; two weeks seems a long time for fixing a computer problem.  However that may be, the Court will allow enlargement for purposes of considering the cross-motion.  *See* B.R. 9006(b).  Counsel's neglect is excusable inasmuch Defendants cannot argue that they would be prejudiced by this latitude.  As will be seen *infra* it gave them the opportunity to finally articulate a persuasive defense to the TILA claim.  Moreover, as the Court will herein rule in Defendants' favor on all counts, the contents of the cross motion do not harm them.

all of the counts are argued to be lacking in legal sufficiency.   There is then considerable

overlap of argument in the motion.   For her part, the Plaintiff's cross motion refutes all of

the theories offered by the Defendants and maintains that the Court should reach the

opposite result.   As between the two motions, then, there is very little in the way of factual

disputes.

*The Respective Roles*
*of MERS and Countrywide*

The Court begins with what the Defendants see as the threshold issue: what

exactly are the interests of MERS and Countrywide in this transaction?  This matters as

the Defendants' answer to that question—which is that neither is the holder of the note

and mortgage—is the premise for a number of their arguments.  Because they are not

holders, the argument goes, they are not subject to Act 6, TILA, or the breach of contract

claim.  *See* MERS/Countrywide Brief, 10-11, 11-12, 24-25.  The Court begins with MERS

which describes itself as follows:

> MERS was created by the real estate finance industry to
> eliminate the need to prepare and record assignments when
> trading residential and commercial mortgage loans.  MERS is
> <u>not</u> a lender but is properly identified on borrower's mortgage
> as the mortgagee in a nominee capacity for the actual holder
> of the loan.  Naming MERS as the mortgage in a nominee
> capacity, and registering the mortgage with MERS, does not
> affect a borrower's obligation to the actual lender.

*Id.*, 4-5.  In support of this contention, MERS offers the Affidavit of Gary Sleeper.  Mr.

Sleeper identifies himself as an Assistant Team Leader for foreclosures and bankruptcy

management at Countrywide.  App., Ex. 18 ¶ 1.  He states in his Affidavit that MERS

holds the mortgage as "nominee" for the Federal Home Loan Mortgage Corporation

(Freddie Mac).  *Id.* ¶ 5.  He adds that MERS is "a company separate and apart from the

lender or owner of the loan and that MERS is named on the mortgage in a nominee

capacity for the actual owner." *Id.* ¶¶ 6,7.

For her part, the Debtor contests—implicitly, at least—the claim that MERS is not

the holder.  The Debtor states that "on February 1, 1999, Matrix Capital Bank assigned

the note and mortgage to MERS who recorded it on August 16, 1999."  Debtor's Brief, 2.

Attached to her Brief is a copy of the assignment from Matrix to MERS.  *See* Debtor's

Brief Ex. 8.  That document does not qualify the status in which MERS purports to hold

the mortgage.  That is, there is no indication that MERS' interest is nominal or custodial.

In fact, the record is devoid of any *documentary* evidence that Freddie Mac, and not

MERS, holds the note.  As a result, the issue of whether MERS is the holder of the note

and mortgage remains very much at issue for purposes of this motion.  So to the extent

that any of MERS' arguments are based on a claim that it is not the present holder, such

claims must fail for purposes of this motion.

There is no such vagueness as to what Countrywide's role was.  The record is

quite clear that it acted as the loan servicer.  The Sleeper Affidavit states that in 2001

Countrywide assumed the servicing of the Debtor's loan.  *See* App. Ex. 18, ¶9.  This is

corroborated by the Proof of Claim which Countrywide filed on MERS' behalf.  *See*

Debtor's Brief, Ex. 1.  It is also not disputed by the Debtor.  The Court now turns to each

count of the Complaint and the various challenges.

*The TILA Claim*

The first count of the Complaint alleges a TILA violation.  According to the

Complaint, the original lender failed to disclose all of the collateral which it took.

Complaint, ¶ 41.  Specifically, it is alleged that the mortgage recites that the loan was

secured not only by the Debtor's real estate, but as well by certain personal property: "appliances, machinery, furniture and equipment (whether fixtures or not)." *Id.* ¶ 11.   The TILA disclosure statement, however, recites only realty as collateral.  *Id.*¶ 13.  According to the Plaintiff, that is a violation of TILA for which MERS is liable as assignee.  *Id.* ¶ 42.

*Does Res Judicata*
*Preclude the TILA Claim?*

MERS first asserts that the Debtor is precluded from raising her TILA claims. It relies on the doctrine of res judicata in arguing that because she did not raise that claim in response to the foreclosure action, she may not do so now.  T-12.  The Court is quite familiar with this argument and has ruled that TILA claims not raised in response to foreclosure may be raised in subsequent litigation.  *See In re Apaydin*, 201 B.R. 716, 720 (Bankr.E.D.Pa.1999).  The analysis employed in *Apaydin* is equally apposite here:

> Based on Pennsylvania law, the existence of the foreclosure judgment does not render the plaintiffs' TILA claims res judicata. Federal courts are required to give state court judgments the same full faith and credit to which they would be entitled under state law. 28 U.S.C. § 1738; *In re Graves*, 33 F.3d 242, 247 (3rd Cir.1994); *Allegheny International, Inc. v. Allegheny Ludlum Steel Corp.*, 40 F.3d 1416, 1429 (3rd Cir.1994). Under the law of Pennsylvania, the entry of a judgment bars the relitigation of all claims and defenses that were or could have been raised in a prior law suit between the same parties.  *Allegheny International*, 40 F.3d at 1429; *Zarnecki v. Shepegi*, 367 Pa.Super. 230, 238, 532 A.2d 873, 877 (1987).
> …
> [ ]Pennsylvania courts have ruled that a defendant may not raise TILA as a counterclaim in a mortgage foreclosure action. *New York Guardian Mortgage Corp. v. Dietzel*, 362 Pa.Super. 426, 524 A.2d 951 (1987); *Fleet Real Estate Funding Corp. v. Smith*, 366 Pa.Super. 116, 530 A.2d 919 (1987). In *New York Guardian Mortgage Corp. v. Dietzel*, 362 Pa.Super. at 430-30, 524 A.2d at 953, the court affirmed a trial court's determination that a defendant in a foreclosure case was not permitted to

advance a counterclaim based on TILA. According to the
court, the interjection of a TILA counterclaim was incompatible
with the foreclosure proceeding because the TILA claim was in
personam in nature, whereas the foreclosure action was
strictly in rem.

Thus, as applied to the Apaydin's TILA claim, Citicorp's res
judicata argument must fail. Res judicata only bars the
litigation of claims that could have actually been raised in a
prior proceeding. With respect to a litigant who was a
defendant in a prior case, section 22 of the Restatement
expressly requires as a predicate to the imposition of res
judicata that the litigant was able to interpose his claim as a
counterclaim in the former case. Where a party lacked the
ability to bring a counterclaim, res judicata is not a bar to the
assertion of that claim in a separate and subsequent law suit.
The present case, constitutes the Apaydins' first opportunity to
raise their TILA claim against Citicorp, and, therefore, it cannot
be barred.

201 B.R. at 720-21. MERS, however, does not rely on *Apaydin* but instead on a recent

district court decision which holds to the contrary. *See Smith v. Litton Loan Servicing, LP*,

2005 WL 289927 (E.D.Pa.). *Smith*, in turn, cites *McGill v. Southwark Realty Co.*, 573 Pa.

704, 828 A.2d 430 (Pa.Comwlth.2003) for the proposition that a default judgment is res

judicata with regard to transactions that occurred prior to the entry of judgment. *See*

*Smith*, *5. MERS maintains that this Court should follow *Smith* for two reasons: the

*Apaydin* decision predated *Smith* and, even if it had not, its facts are distinguishable.

Defendants' Brief, 14 n.13. The Court will address each argument in turn.

*Precedential Effect of
the District Court Opinion*

Presumably, the significance of the timing of the *Smith* decision for MERS is that

the District Court's ruling is binding upon this Court. If so, the Court disagrees. There is

no such thing as the "law of the district." As the Third Circuit has explained:

> Even where the facts of a prior district court case are, for all
> practical purposes, the same as those presented to a different
> district court in the same district, the prior "resolution of those
> claims does not bar reconsideration by this Court of similar
> contentions. The doctrine of stare decisis does not compel one
> district court judge to follow the decision of another." Where a
> second judge believes that a different result may obtain,
> independent analysis is appropriate.

*Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 (3d Cir.1991).  This

applies equally in the bankruptcy context.  *See In re Morningstar Enter., Inc.*, 128 B.R.

102, 106 n.1 (Bankr.E.D.Pa.1991).  Elsewhere, the majority of courts that have

addressed this question have also concluded that a bankruptcy court is not bound by the

pronouncement of a single district judge in a multi-judge district.  *See, e.g., In re KAR Dev.*

*Assocs.*, 180 B.R. 629, 640 (D.Kan.1995); *In re 400 Madison Avenue Limited Partnership*,

213 B.R. 888, 890 n. 2 (Bankr.S.D.N.Y.1997); *In re Volpert*, 177 B.R. 81, 85

(Bankr.N.D.Ill.1995); *In re Barkley 3A Investors, Ltd.*, 175 B.R. 755, 758

(Bankr.D.Kan.1994).  *See also* David A. Levin, *Precedent and the Assertion of*

*Bankruptcy Court Autonomy: Efficient or Arrogant?*, 12 Bankr. Dev.J. 185 n.1 (1995)

(listing cases).  Various rationales are offered for this outcome: (1) that the bankruptcy

court is not a "lower court" for purposes of stare decisis but rather constitutes a unit of the

district court; (2) that district court decisions are not binding on other district judges within

that district; and/or (3) that it is uncertain which district judge within a multi-judge district

will hear a given appeal.  *In re Raphael*, 230 B.R. 657, 664-65 (Bankr.D.N.J.1999) *rev'd*

*on other grds* 238 B.R. 69.  Another bankruptcy court puts the analysis this way:

> [T]he rationale underlying the rule that lower courts are
> necessarily bound by the decisions of higher courts focuses
> on the need to avoid voluminous appeals. This reasoning,
> however, does not apply in the context of the appellate
> jurisdiction of a multi-judge district court over the bankruptcy

courts of that district. It is a well-accepted rule of law that no
judge within a district court is bound by the decision of the
other district judges.... Thus, unless all judges in a single
district have ruled consistently upon the same issue, there will
be a strong incentive to appeal from the decisions of the
bankruptcy court even if it is deemed bound by a prior district
court opinion. Furthermore, in the event of conflicting district
court opinions, the bankruptcy court is faced with the problem
of determining which is binding. Unlike the Supreme Court or
the courts of appeal, the district court does not speak with one
voice and thus it cannot be treated as a higher court issuing
binding precedent for the bankruptcy courts.

*In re Shattuc Cable Corp.*, 138 B.R. 557, 566-67 (Bankr.N.D.Ill.1992).  Accordingly, the

District Court's decision in *Smith* is only persuasive authority for this Court.

MERS' second reason why *Apaydin* is not apposite is that it "focused on the impact

of a TILA counterclaim in a state foreclosure action and not the failure (as in *Smith*) to

raise the TILA defense in earlier state court proceedings."  Defendants' Brief, 14.  What

the difference is between those two circumstances this Court cannot fathom.  Both cases

involve mortgage foreclosures and subsequent claims of TILA violations.  It is not

significant that the judgment-debtor *did not* raise the TILA claim in response to

foreclosure; what matters is that the judgment-debtor *could not* raise those claims in that

limited forum.  This Court continues to stand by its decision in *Apaydin* and finds it to be

apposite here.[8]  The TILA claim is, therefore, not precluded.

*Assignee Liability
for the TILA Claims*

---

[8]  Moreover, the Court finds *Smith* to be unpersuasive because its reliance on res judicata
does not recognize that exceptions exist to that doctrine.  Those exceptions will be discussed *infra*
with regard to the breach of contract claims.

MERS next challenges the TILA claim because it is an assignee. It begins by maintaining that it cannot be liable because it is not the *original assignee* of the *original lender*. In other words, the argument goes, subsequent assignees such as MERS can never be liable. Defendants' Brief, 12. MERS' offers no authority for that claim and this Court independently has found none. That is not surprising; if it were otherwise, immediate assignees would innoculate themselves from TILA liability by assignment to someone else.[9]

MERS next argues that *qua* assignee it is not liable because it took the loan in good faith. It cites Third Circuit law which holds that in order for an assignee to be liable, the violation must be apparent on the face of the assigned disclosure documents. Defendants' Brief, @ 12 citing *Ramadan v. Chase Manhattan Corp.*, 229 F.3d 194 (3d Cir. 2000). Presumably, then, MERS is arguing that the violations are not apparent.

The Plaintiff disputes any such claim of innocence. She cites § 1641(a) which makes the assignee liable for violations "apparent on the face of the disclosure statement and *other documents assigned*." 15 U.S.C. § 1641(a) (emphasis added). Plaintiff's Brief @ 12. She concludes that due diligence required MERS' to scrutinize the mortgage for TILA violations. That, she contends, would have revealed the TILA violation. *Id.*

MERS disagrees. In its Response to the Plaintiff's cross motion, MERS argues that the universe of documents that an assignee must examine does not include the mortgage. MERS was required to determine if proper disclosure was made "among the disclosure statement, any itemization of the amount financed, the notes or any other

---

[9]And the case which the Defendants cite for that proposition, *Chow v. Aegis Mortgage Corp.* 286 F.Supp.2d 956 (N.D.Ill.2003), does not state that. To the contrary, it holds that assignee*s* of the original creditor may be liable. *Id.* at 959. It is servicers of the loan who are not liable. *Id.*

disclosure of disbursement."  Defendants' Response, @ 7 citing 15 U.S.C. § 1641(e)(2).

MERS characterizes this information as "disclosure documents" which are defined in TILA

§ 1602(u).  It cites a number of cases which hold that the assignee is not required to

examine what it refers to as "extraneous" or "extra-TILA-disclosure" documents.  *Id.*  A

mortgage, such as this one, it continues, is one such document.  Because the violation is

in the mortgage, and not the TILA disclosures, MERS concludes, it cannot be liable as an

assignee.

In reviewing the arguments, the Court finds MERS to be correct in arguing that

subsection (e)—as opposed to subsection (a)—of §1641 applies here.  That section

provides:

> (e) Liability of assignee for consumer credit transactions
> *secured by real property*
>
> (1) In general
>
> Except as otherwise specifically provided in this subchapter,
> any civil action against a creditor for a violation of this
> subchapter, and any proceeding under section 1607 of this
> title against a creditor, *with respect to a consumer credit
> transaction secured by real property* may be maintained
> against any assignee of such creditor only if--
>
> (A) the violation for which such action or proceeding is brought
> is *apparent on the face of the disclosure statement* provided in
> connection with such transaction pursuant to this subchapter;
> and
>
> (B) the assignment to the assignee was voluntary.

15 U.S.C. § 1641(e)(1) (emphases added).   Section 1641(e) creates assignee liability for

TILA violations in transactions *secured by real property*.  *Ramadan*, 229 F.3d at 199;

*accord Kane v. Equity One, Inc.*, 2003 WL 22939377 *4 (E.D.Pa.) and *In re Crisomia*,

2002 WL 31202722 *6 (Bankr.E.D.Pa.).  And importantly for present purposes, §1641(e)

provides its own definition of the phrase "apparent on the face of the disclosure

statement:"

> For the purpose of this section, a violation is apparent on the
> face of the disclosure statement if–
>
> (A) the disclosure can be determined to be incomplete or
> inaccurate by a comparison among the disclosure statement,
> any itemization of the amount financed, the note, or any other
> disclosure of disbursement....

15 U.S.C. § 1641(e)(2). This definition does not contain the critical clause "or other

assigned documents" found in subsection (a). That is significant here. As the Third

Circuit has pointed out, "[s]ection § 1641(e) was adopted 15 years after § 1641(a), and it

therefore demonstrates Congress knows how to adopt a different formulation of 'apparent

on the face' if it desires." *Ramadan*, 229 F.3d at 200.[10] One commentator explains what

documents the assignee is required to examine:

> A violation is only "apparent" for real estate transactions if it
> fits squarely into one of the two parts[11] of the definition. The
> first part of the definition is if "the disclosure statement can be
> determined to be incorrect or inaccurate by a comparison
> among the disclosure statement, any itemization of the
> amount financed, the note, or any other disclosure of
> disbursement." This latter document would most likely be a
> HUD-1 settlement statement. These apparently are the only
> documents that Congress though mortgage assignees should
> be responsible for examining. If a disclosure is apparent from
> another document contained in the assigned mortgage file, the
> assignee is protected, even if just a cursory review of the other
> document would have revealed the error.

_____

[10]This also shows that Defendants' reliance on § 1602(u) to establish which documents MERS was required to examine before accepting the assignment is misplaced. Section 1641 itself delineates which documents must be perused.

[11]The second part of the definition is if "the disclosure statement does not use the terms or format required to be used by this title." That is not what the Plaintiff is alleging here so the Court need not address that.

Rohner & Miller, *Truth in Lending*, ¶ 12.06[2]*[b]* ABA (2000).  MERS would appear to be

correct, then, in arguing that the mortgage was not one of the documents that it was

required to compare with the TILA disclosure statement.  T-7.  A review of the documents

that it was required to review reveals no discrepancy.  Because the TILA claim against

MERS qua assignee is based on the failure to inspect the mortgage, it must fail.[12]

*The UDAP Claim*

The next remaining count alleges that the Defendants[13] violated the Pennsylvania

Unfair Trade Practices and Consumer Protection Law (UDAP).[14]   According to the

Complaint, the Defendants wrongly "represented that they were entitled to fees and costs

and took a judgment based on that representation."  Complaint ¶ 18.  The Defendants

challenge that claim on three grounds: first, that the demand for fees is entitled to judicial

privilege; second, that the Debtor cannot establish that she suffered any loss or damages

as a result of that demand; and third, that her UDAP claim is barred by the *Rooker-*

*Feldman* doctrine.

*Judicial Privilege*

Judicial privilege is normally associated with the protection given to otherwise

defamatory statements made in judicial proceedings:

---

[12]While this count does not appear to have been brought against Countrywide, it would not be sustainable against that defendant.  Loan servicers are liable only where they hold or have formerly held the note.  *See* 15 U.S.C. § 1641(f)(1).

[13]Plaintiff is vague here as to whether this count is brought as to both Defendants. Paragraph 48 of the Complaint references "Defendant*s*" conduct while the next concludes that "Defendant" is liable.  *See* Complaint ¶¶ 48-49.

[14]The Court has chosen the shorter acronym for this count—UDAP as opposed to UTPCPL— consistent with jurisdictions throughout the country which prohibit *u*nfair and *d*eceptive *a*cts and *p*ractices.  *In re Jackson*, 245 B.R. 23, 27 (Bankr.E.D.Pa.2000)

> It has long been the law of Pennsylvania that statements
> made by judges, attorneys, witnesses and parties in the
> course of or pertinent to any stage of judicial proceedings are
> absolutely privileged and, therefore, cannot form the basis for
> liability for defamation.
> ...
> The limitations on the scope of this privilege are equally
> well-defined.  As the Supreme Court has explained,
> the "protected realm" is limited to "those communications
> which are issued in the regular course of judicial proceedings
> and which are pertinent and material to the redress or relief
> sought."

*Pawlowski v. Smorto*, 403 Pa.Super.Ct. 71, 80, 588 A.2d 36, 41 (1991) (*quoting Post v. Mendel*, 510 Pa. 213, 221, 507 A.2d 351, 355 (1986)) (emphasis omitted).  Although defamation is the most common context in which the privilege is raised, It extends to protect statements made in judicial proceedings regardless of the tort claimed.  *Clodgo by Clodgo v. Bowman*, 411 Pa.Super. 267, 273, 601 A.2d 342, 345 (Pa.Super.1992) ("The form of the cause of action is not relevant to application of the privilege. Regardless of the tort contained in the complaint, if the communication was made in connection with a judicial proceedings [sic] and was material and relevant to it, the privilege applies.")  The privilege applies no less equally to statements made in a party's pleading.  *Todi v. Stursberg*, 2001 WL 1557517 *1 (E.D.Pa.).  For that reason, the contents of the foreclosure complaint are simply not actionable.[15]

*Rooker-Feldman*

Equally, interests of federalism prevent this Court from hearing the UDAP claim. As a general rule, lower federal courts are without power to sit in direct review of state court decisions. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482, 103

---

[15]For that matter, the Defendants' judicial privilege argument is equally unpersuasive as to the Act 6 claim, *infra*.

-15-

S.Ct. 1303, 1315, 75 L.Ed.2d 206 (1983). "The *Rooker/ Feldman* doctrine[,] ... derived

from two Supreme Court cases decided sixty years apart, *Rooker v. Fidelity Trust Co.*,

263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and ... *Feldman*, [supra,] [and] ...

expresses the principle that 'federal trial courts have only original subject matter, and not

appellate, jurisdiction [and] ... may not entertain appellate review of [or collateral attack

on] a state court judgment.' " *In re Singleton*, 230 B.R. 533, 536 (6th Cir. BAP 1999)(citing

*In re Johnson*, 210 B.R. 1004, 1006 (Bankr.W.D.Tenn.1997)). Moreover, if an issue

presented to a federal court is "inextricably intertwined" with the state court's decision,

and in ruling on the issue, the district court is in essence being called upon to review the

state court decision, the district court is similarly without jurisdiction to consider the

matter. *Feldman*, 460 U.S. at 483, 103 S.Ct. at 1314.  A claim is inextricably intertwined

with a state court decision if the relief requested from the federal court would effectively

reverse the state court or void its ruling. *In re Siskin*, 258 B.R. 554, 564

(Bankr.E.D.N.Y.2001)(quoting *In re Hatcher*, 218 B.R. 441, 447 (8th Cir. BAP 1998), *aff'd*,

175 F.3d 1024 (8th Cir.1999)); *see also In re Jones*, 2003 WL 22843162 *4 n. 5

(Bankr.E.D.Pa.)(explaining that *Rooker-Feldman* is jurisdictional); *In re Wilson*, 116 F.3d

87, 90 (3d Cir.1997) (holding that doctrine applies to prevent debtor from re-litigating

adverse state trial court judgment in bankruptcy court)

   The Defendants argue that the Plaintiff is attempting to negate the foreclosure

judgment.  Defendants' Brief, 23.  Plaintiff responds arguing that it is not trying to void the

judgment but, rather, is determining the amount of the secured claim.  Plaintiff's Brief, 7.

However the Plaintiff may characterize its intentions, what is apparent to the Court is that

she is trying to reduce a $12,000 judgment to $1800 and pay that over 3 years.  *See*

-16-

Plan.  That would effectively reverse the state court foreclosure judgment.  Therefore,

*Rooker-Feldman* is very much implicated here.[16]

*Has Plaintiff Suffered a Loss?*

But aside from privilege and preclusion, the Defendants attack the UDAP claim as

legally insufficient.  UDAP requires the plaintiff to prove an "ascertainable loss" resulting

from the alleged deception.  73 P.S. § 201-9.2; *Smith v. Commercial Banking Corp.*, 866

F.2d 576, 582 (3d Cir.1989); *Clark v. U.S. Banking, N.A.*, 2004 WL 1380166 *6 (E.D.Pa.);

*In re Bryant*, 111 B.R. 474, 478 (E.D.Pa.1990).  Plaintiff maintains that by "taking a

judgment against her based on the Defendants' misrepresentation [i.e., the amount of

legal fees as provided for under the mortgage]," she has suffered a loss under UDAP.

Plaintiff's Brief, @ 13.  But as the Defendants point out in their supplemental brief, the

Plaintiff did not act on the alleged misrepresentation.  There is no evidence that she relied

to her detriment on the demand for legal fees in the foreclosure complaint.  The Plaintiff's

argument seems, then, merely an exercise in sophistry.  So to the extent the UDAP claim

is based on the Defendants' demand for legal fees, summary judgment would be

appropriate.

*The Breach of Contract Claims*

Count IV of the Complaint alleges two breach of contract claims against the

"Defendant and its servicer."[17]  *See* Complaint, ¶ 52.  First, it is alleged that the

Defendants breached the note by charging "excessive and unauthorized amounts."  *Id.*

Plaintiff's counsel confirmed for the Court that this refers to the fees charged in

---

[16]And it would apply to the Act 6 claim as well.

[17]Again, it is unclear why the Plaintiff specifically references the loan servicer in this count.

connection with the second foreclosure.  T-14.  They consist of attorneys fees,

escrow/impound fees, property inspections, foreclosure fees, and title fees.  *See*

Complaint ¶¶18; 35-37.  The other breach is alleged to be the Defendants' failure to

accurately account for payments Plaintiff made.  *Id.*  ¶¶ 33,34, 52.

*Res Judicata and
the Contract Claims*

The first challenge to the contract claims is that they are precluded under res

judicata. The Defendants say that because the events giving rise to those claims occurred

before the foreclosure judgment, those claims are now merged into it.  Defendants' Brief,

28.  The Plaintiff's response is two-fold.  She argues first that counterclaims to foreclosure

complaints must be a "part of, or incident to, the creation of the mortgage itself."

Alternatively, she maintains that her claims — with the exception of the TILA count — all

occurred after her default under the instrument.  Plaintiff's Brief, 6.  What is the effect of

the Plaintiff's failure to have raised those claims at foreclosure?

The foreclosure judgment is entitled to full faith and credit.  *See* 28 U.S.C. § 1738

(requiring that a final state court judgment be accorded same respect and finality in

federal court that it would in state court of origin).  This implicates the doctrine of res

judicata which "holds that 'a final valid judgment upon the merits by a court of

competent jurisdiction bars any future suit between the parties or their privies, on the

same cause of action.' " *Coover v. Saucon Valley School District*, 955 F.Supp. 392, 411

(E.D.Pa.1997) (*quoting Keystone Bldg. Corp.* v. 468 Pa. 85, 91, 360 A.2d 191, 194

(1976)).  Res judicata applies not only to matters which were actually litigated, but also to

matters which should have been litigated at the first proceeding if they were part of the

-18-

same cause of action. *C.D.G., Inc. v. Workers' Compensation Appeal Board*, 702 A.2d 873, 876 n. 5 (Pa.Cmwlth.1997). In order for res judicata to apply, a concurrence of four conditions must be shown: 1) identity of persons and parties to the action; 2) identity of the thing sued upon or for; 3) identity of causes of action; and 4) identity of the quality or capacity of the parties suing or being sued. *Rawlings v. Bucks County Water and Sewer Authority*, 702 A.2d 583, 585 (Pa.Cmwlth.1997). Which of these elements are present?

The first, second and fourth elements are demonstrated. The same parties appear and in the same capacity. Likewise, the thing sued upon in both proceedings is the mortgage and note. That leaves the question of whether there is an "identity of causes of action" between the two actions. Notably, the roles of the parties here are essentially reversed from the earlier proceeding. This brings to mind the principles applicable to the assertion of counterclaims by a party who was formerly a defendant in action between them. The Restatement (Second) of Judgments specifically address when the failure to raise a counterclaim bars a litigant from subsequently raising that claim independently. Section 22 of the Restatement provides:

> § 22. Effect of Failure to Interpose Counterclaim
>
> (1) Where the defendant may interpose a claim as a counterclaim but he fails to do so, he is not thereby precluded from subsequently maintaining an action on that claim, except as stated in Subsection (2).
>
> (2) A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if:
>
> (a) The counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court, or

> (b) The relationship between the counterclaim and the
> plaintiff's claim is such that successful prosecution of the
> second action would nullify the initial judgment or would
> impair rights established in the initial action.

Restatement (Second) Judgments § 22 (1982).  This section has been adopted by

Pennsylvania courts.  *See, e.g., Del Turco v. Peoples Home Savings Ass'n*, 329

Pa.Super. 258, 271, 478 A.2d 456, 463 (Pa.Super.1984); *Massullo v. Hamburg, Rubin, et*

*al,* 1999 WL 313830 *6 (E.D.Pa.); *Martin v. Poole*, 232 Pa. Super 263, 269, 336 A.2d 363,

369 (Pa.Super.1975) (adopting section 58 of prior restatement, predecessor to section

22).  The general rule therein is that the failure to assert a counterclaim in a prior action is

not a bar to the assertion of the claim in a subsequent action unless a compulsory

counterclaim rule is applicable or the counterclaim will undermine a prior judgment.  *In re*

*Galloway*, 220 B.R. 236, 241 (Bankr.E.D.Pa.) The rationale for the rule is to allow parties

the freedom to assert claims at the time and place of their choosing, rather than being

limited to the forum chosen by an opponent.  *Id.* citing Restatement § 22, comment a.

The Plaintiff correctly points out that under Pennsylvania procedural law, there is

no compulsory counterclaim rule.  Plaintiff's Brief, citing Pa.R.C.P. 1148; *Martin v. Poole,*

*supra.*  As a matter of procedure, then, the Plaintiff was not required to raise her contract

claims.  The Court therefore inquires as to whether the Debtor's breach of contract claims

might affect the foreclosure judgment.  It is clear they would under the plan as proposed:

the Debtor intends to pay the judgment less offsetting damages arising from the alleged

breaches.  *See* Complaint, ¶30; Plan, §4c.  This makes important the connection between

the Plaintiff's contract claims and the Defendants' foreclose right.  To the extent that such

claims would have affected the mortgage judgment, they merged into it.  *See In re*

*Stendardo*, 991 F.2d 1089, 1094-95 (3d Cir. 1993) "(Under controlling Pennsylvania law,

'[i]t is elementary that judgment settles everything involved in the right to recover, not only

all matters that were raised, but those which might have been raised. The cause of action

is merged in the judgment which then evidences a new obligation'"); *see also In re Rorie*,

98 B.R. 215, 218-19 (Bankr.E.D.Pa.1989) ("[I]f the debtor proposes to pay the creditor's

allowed secured claim in full, the judgment does affect the amount of that claim. The entry

of judgment merges the obligation on the mortgage into the judgment).

Again, the contract claims consist of alleged overcharging for legal and other fees

in connection with the foreclosure as well as the failure to credit all payments made. The

first group of charges not only predate the judgment, they constitute components of it.

*See* Plaintiff Ex. 10. They should have been disputed in the foreclosure proceeding but

were not. They are therefore barred. Similarly, the claim that MERS was not giving

Plaintiff credit for all of the payments she made should also have been raised at that time.

The record demonstrates that the Debtor's last payment on the loan was in April 2003.

That is almost eight months prior to the foreclosure. That claim involved the very loan

balance itself and would have, if prosecuted successfully, affected the amount of the

judgment. It appears, then, that the factual bases for the contract claim arises out of

rights created by the mortgage. The failure to raise those claim in response to the

foreclosure complaint means that they are similarly precluded here.

*Privity and the Breach
of Contract Claim*

The Defendants deny that either had a contractual relationship with the Plaintiff.

Defendant's Brief, 24. In support of that allegation, they offer her discovery responses.

-21-

Therein she admits to not knowing who MERS is and that she believes that Countrywide is the "mortgage holder or servicer [who] mailed monthly statements to [her]." *Id.* 25. The Plaintiff responds that whatever she may have said in discovery, the loan documents speak for themselves. Plaintiff's Brief, 16. For the Plaintiff, the loan documents demonstrate that MERS is the present holder. And for purposes of summary judgment, the Court agrees with the Plaintiff. For that reason, the claim of no privity is not persuasive.

*Are the Breach of Contract*
*Claims Time-Barred?*

The Defendants final challenge to the contract claims is that they are stale. Pennsylvania provides for a 4 year limitations period for breach of contract claims. *See* 42 P.S. § 5255. In response, the Plaintiff argues that even if that claim is affirmatively barred, she may raise it defensively, by way of recoupment. "Recoupment is a common law contract doctrine that allows 'countervailing claims, which otherwise could not have been asserted together to be raised in a case based upon any one of them." ' *Integra Bank/Pittsburgh v. Freeman*, 839 F.Supp. 326, 330 (E.D.Pa.1993), (citing *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir.1984)). Unlike setoff, recoupment "lessens or defeats any recovery by the plaintiff." *Algrant v. Evergreen Valley Nurseries L.P.*, 126 F.3d 178, 184 (3d Cir.1997) (quoting *Household Consumer Discount Co. v. Vespaziani*, 490 Pa. 209, 219, 415 A.2d 689, 694 (1980)). A party may assert recoupment as a defense after a statute of limitations period has lapsed. *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 415, 118 S.Ct. 1408, 1414, 140 L.Ed.2d 566 (1998). The defense must be related to the nature of the demand made by the other party, that is, it must arise from the

same contractual transaction. *In re Roberson,* 262 B.R. 312, 322 (Bankr.E.D.Pa.2001).

Here, the alleged overcharging for foreclosure costs and the failure to credit all payments

derives from the same source as the Defendants' claims, i.e., the note. The Plaintiff,

accordingly, would appear to be able to raise her contract claim at least defensively.

*The Act 6 Claim*

The last count alleges that MERS violated Act 6 by charging foreclosure fees that

were neither reasonable nor actually incurred. *See* Complaint, ¶ 56. As with the other

counts, the Defendants make a number of alternative arguments.

*Are MERS and Countrywide*
*Subject to Act 6?*

Defendants maintain that they cannot be liable under Act 6 because that statute

applies only to "residential mortgage lender[s]." The act defines that term as

> any person who lends money or extends or grants credit and
> obtains a residential mortgage to assure payment of the debt.
> The term shall also include the holder at any time of a
> residential mortgage obligation.

41 P.S. § 101. The Court has already found Countrywide to have been the loan servicer,

and not the lender; therefore it cannot be liable under Act 6. As to MERS, the record

remains unclear as to whether it was the successor in interest to Matrix Capital, the prior

holder, or if it is the nominee of Freddie Mac as it maintains. For summary judgment

purposes, then, the Court must reject MERS' claim that it is not subject to Act 6.

*Does the Act 6 Claim Fail*
*on a Substantive Level?*

The Defendants next challenge the merits of the Act 6 claim. As they explain, Act

6 prohibits the assessment of unreasonable and unearned attorney's fees as part of a

-23-

mortgage foreclosure.  Defendants' Brief, 19.  But for that to be actionable, those charges

must have been paid by the Debtor.  Indeed, the statute predicates liability on payment:

"[a] person who has *paid* charges prohibited or in excess of those allowed by this act or

otherwise by law may recover triple the amount of such charges in a suit at law against

the person who has collected such charges." 41 P.S. § 502 (emphasis added).  The

record, however, does not show that such fees have been paid.  The Debtor's last

payment was in April 2003—almost 8 months prior to the foreclosure. (February 2004).

App. Ex. 17; Plaintiff's Ex. 9.  So the Plaintiff did not pay any charges that were prohibited

under Act 6.  *Cf. Waye v. First Citizens Nat.Bk.*, 846 F.Supp. 310, 319 (M.D.Pa.1994)

(holding that Act 6 claim for demanding rate of interest in excess of statutory rate exists

only if interest was actually paid, not if it was merely demanded without success)  Like the

UDAP claim, then, the Plaintiff's Act 6 claim fails for want of damages.[18]

*Summary*

        The record demonstrates no liability on the part of Countrywide, the loan servicer.

MERS argues, unsuccessfully for present purposes, that it is not the holder of the

mortgage, but it prevails for another reason: all of the substantive claims against it are

legally insufficient.  MERS is protected from liability under TILA as a good faith assignee.

As to the other claims, they were either merged into the foreclosure judgment or fail to

demonstrate damages.  For these reasons, summary judgment will be entered in the

Defendants' favor on all of the claims raised in the Complaint.

---

        [18]This finding renders moot the Defendants' argument that the Act 6 claim is time-barred.
The Court points out, however, that Act 6 does indeed have its own Statute of Limitations.  *See* 41
P.S. § 502 (setting limitations period at 4 years from the time of payment and limiting triple damages
to a 4 year period).

An appropriate order follows.

By the Court:

_____

Dated:  March 13, 2006

Stephen Raslavich
United States Bankruptcy Judge